IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

JAMES MARSHALL,
:
    Petitioner,                                     Case No. 1:09-cv-429

:          District Judge Michael R. Barrett
   -vs-                                         Magistrate Judge Michael R. Merz

Warden, Ross Correctional Institution,
:
    Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

       This habeas corpus action is before the Court on Petitioner's Objections (Doc. No. 41) to the Magistrate Judge's Decision and Order Denying Motions to Expand the Record and for Evidentiary Hearing and Report and Recommendations on the merits (the "Report," Doc. No. 39). Judge Barrett has recommitted the case to the Magistrate Judge for reconsideration in light of the Objections (Doc. No. 42).

### Motion to Expand the Record

       Marshall moved to expand the record to include a transcript of the grand jury proceedings in Hamilton County Case No. B0506040 in which he and three co-defendants were charged with one count of murder with a firearm specification (Doc. No. 36). He advised he was attaching two pages of that transcript, noting that he had all of the transcript except for pages 14-18 and asked the Court to obtain the entire transcript and furnish him with a copy. *Id.* at PageID 3273.

1

The Magistrate Judge denied the Motion to Expand, which included a request for discovery, on the grounds that Marshall had not shown materiality or a proper basis to pierce grand jury secrecy (Report, Doc. No. 39, PageID 3309).

In his Objections, Marshall renews his request to expand the record and has attached what purport to be pages from the grand jury transcript.[1]  The Magistrate Judge assumes the authenticity of the typed portions of these pages.  On that assumption, at least as to the testimony recorded on these pages, grand jury secrecy has been breached and there is no longer a need to deny the motion on that basis.  However, Marshall has still not shown that this testimony is material to his case.  What counts at the trial of a criminal case is not what has been shown to the grand jury to establish probable cause, but what is shown at trial.

Washington's statement at PageID 3395 of the purported grand jury testimony that he knew Sublett, the victim, had a gun is not so inconsistent with his trial testimony (remembering that Washington himself was a co-defendant) as to support a claim that the prosecutor suborned perjury.  Considering Washington's trial testimony, the Hamilton County Court of Appeals found:

> Washington claimed that the robbery plan did not call for the use of a gun. Rather, Sublett was to grab the marijuana and run. Washington also stated that he knew Sublett owned a gun but that he did not know that Sublett had his gun with him that day. On cross-examination, Washington admitted that, after he had heard the gunshots, he thought Sublett might have had the gun with him.

*State v. Marshall,* 175 Ohio App. 3d 488, ¶ 13 (Ohio App. 1st Dist. 2008).  Marshall himself did not testify at trial that the two gunshots Washington  heard came from Sublett.  He claimed instead that Sublett had a revolver pointed at Marshall when the driver, the fictitious D.C., shot

---

[1] An unnumbered page and pages 4-27 of what appears to be the relevant grand jury transcript are attached to the Objections, Doc. No. 41, as PageID 3379-3398.  This is obviously not the complete transcript of grand jury proceedings and does not bear a court reporter's certificate.  It also includes a great deal of underlining and a number of handwritten notes whose origin is not disclosed to the Court.

Sublett. *Id.* at ¶ 35.

The trial testimony supports Marshall's claim that he was set up by Deangelo Tait and that the robbery had been planned over a number of days by Tait, Washington, and Sublett. The testimony is equivocal on whether it was planned that Sublett would carry a gun, but it is certainly true that a gun was found in Sublett's pocket when he was pronounced dead at the hospital. No one testified in support of Marshall's theory that Sublett had two guns, but even if he did, that hardly proves Marshall is innocent: the bullets entered Sublett's skull from the rear, according to the coroner.

In sum, whether the robbery was planned to be a "snatch and grab" without a weapon or an armed robbery does not make a difference in the outcome. Sublett paid with his life for his participation in the robbery, whatever degree of planning was involved. Marshall has never claimed that he shot Sublett in self defense. Instead he claimed at trial that the fictitious "D.C." shot Sublett and he now claims that Jason Jones was the driver and did the shooting. Thus there is no good reason to expand the record to include the grand jury testimony, particularly since the grand jury transcript was not before the court of appeals. *State v. Marshall, supra*, at ¶ 67.

## Motion for an Evidentiary Hearing

Marshall sought an evidentiary hearing without any indication of what evidence he intended to present (Motion, Doc. No. 38, PageID 3301-3303.) Instead, he claimed in conclusory fashion that he wanted to "adequately develop the factual basis for his constitutional claims" and he relied on *Townsend v. Sain*, 372 U.S. 293 (1963).

In denying the hearing, the Magistrate Judge noted that the law on when an evidentiary hearing can be held in habeas corpus has changed very substantially in the almost fifty years since Townsend, particularly with adoption of the AEDPA and with the Supreme Court decision in *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388 (2011) (Report, Doc. No. 39, PageID 3311). Indeed, even before AEDPA was adopted, the Supreme Court had severely limited what could be presented in a habeas evidentiary hearings in *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).

In objecting to the Report, Marshall now says what he wants to do at a hearing is to "allow [Jason] Jones to come forward for the first time and give his testimony and put it on the record the events that took place the day of the shooting." (Objections, Doc. No. 41, PageID 3357).

28 U.S.C. § 2254(e)(2) expressly prohibits a habeas corpus court from holding an evidentiary hearing to consider evidence relevant to a constitutional claim if the habeas applicant failed to develop the factual basis in state court and cannot show that the evidence "could not have been previously discovered through the exercise of due diligence." Marshall already knew when the shooting happened what Jason Jones' involvement was, yet he perjured himself at trial by saying the fictitious D.C. was the driver and shooter. Committing perjury to shield a co-conspirator does not constitute due diligence in presenting that co-conspirator's testimony. The Objections add nothing to support granting an evidentiary hearing.[2]

---

[2] Marshall quibbles at the Report's use of the word "testified" to describe the evidence Jason Jones has presented by affidavit.

### Grounds One and Three:  Insufficient Evidence

In Grounds One and Three, Marshall argues that there is insufficient evidence to establish every element of the crime of murder beyond a reasonable doubt.  As noted in the Report, these claims were decided by the state courts on the merits and those decisions are entitled to double deference under AEDPA.  (Report, Doc. No. 39, PageID 3326, *citing Coleman v. Johnson*, 566 U.S. ___, 132 S. Ct. 2060, 182 L. Ed. 2d 978 (2012)(*per curiam)*; *accord Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009)).

The Objections do not raise any points that need further analysis, except that Marshall seems focused on the claim that the State did not show purpose to cause death.  Two bullets to the back of the head are sufficient proof of purpose to cause death.  Both A'leha Williams and the deputy coroner testified to that location for Sublett's wounds.  Marshall is correct that the evidence also supports a conviction for the lesser included offense of involuntary manslaughter, but that does not preclude conviction for the greater offense of murder.

### Ground Two:  Manifest Weight of the Evidence

The Report recommends dismissing Ground Two without prejudice because it does not state a constitutional violation.  Marshall objects to that recommendation, but does not cite any authority making this a constitutional violation.  Instead, he spends further effort under Ground Two arguing the insufficient evidence claim.  No further analysis is needed on Ground Two.

**Ground Four:  Improper Introduction of Evidence**

In his Fourth Ground for Relief, Marshall claims the trial court erred in letting the State prove (1) he used a false name to evade arrest after he fled to North Carolina following the shooting and (2) admitting in evidence the 429 pounds of marijuana found at the home of Jason Jones and Sheila Marshall, Petitioner's sister.  The Report recommended rejecting this claim because it was based entirely on Ohio law and because the evidence was relevant (Report, Doc. No. 39, PageID 3331).

In his Objections, Marshall again relies on Ohio law (Objections, Doc. No. 41, PageID 3360-3361).  He offers no federal authority for the proposition that admitting this evidence violated his constitutional rights.  He admits using the false name Antonio Allen and that he did it to evade arrest, albeit, he claims, only on a probation violation.  The fact that he was willing to use a false name to evade arrest at all goes directly to his credibility as a witness, as the court of appeals found.  He believes his admission that he and Jones had a deal to sell two pounds of marijuana makes the 429 pounds irrelevant, but the purpose of the State was to prove he and Jones were dealers.

He complains in the Objections about admission of a shell casing.  Nothing in the Report discusses admission of that casing, but the court of appeals found it was relevant as a matter of state law.  *State v. Marshall, supra,* ¶ 63-64.  This Court cannot in habeas corpus review the decisions of the state courts on matter of state law.

**Ground Five: Prosecutorial Misconduct**

In his Fifth Ground for Relief, Marshall claims he was denied due process by various acts of misconduct by the prosecutor. The Report found that this claim had been presented to the state courts and resolved by them on the merits (Report, Doc. No. 39, PageID 3331-3335). The Report concluded that the state court decision was neither contrary to nor an objectively unreasonable application of the relevant Supreme Court precedents and was therefore entitled to deference under the AEDPA. *Id.*

Marshall complains that the prosecutor called him a liar during closing argument. Marshall took the witness stand in his own behalf and admitted using the alias Antonio Allen in order to evade arrest. Marshall complains that the prosecutor's purpose was to mislead the jury so they "can't believe nothing that Marshall is saying." (Objections, Doc. No. 41, PageID 3362.) However, a standard jury instruction on the credibility of witnesses tells jurors that if they find a witness lied about one thing, they may conclude he lied about other things as well. Marshall now of course admits he perjured himself by identifying the driver as the fictitious "D.C.," when Marshall knew at the time that it was Jason Jones and was lying to the jury to protect Jones.

Marshall claims in his Objections that the prosecutor committed misconduct by misleading the jury into believing Sublett was shot in the back of the head (Objections, Doc. No. 41, PageID 3362). This sub-claim is not made in the Petition or the Memorandum of Law in Support of the Petition (Doc. Nos. 2 and 3). Marshall also did not raise this claim on direct appeal (Appellant's Brief, Return of Writ, Doc. No. 15, Ex. 19, PageID 278-279). That sub-claim is therefore procedurally defaulted for failure to present it to the state courts or to plead it in the Petition.

Marshall raises as another sub-claim the failure of the prosecutor to disclose to him the two DVDs showing Washington's statements at the police station which were disclosed to Jones during his case.³ This is also a sub-claim not presented on direct appeal. *Id.* Nor was this sub-claim presented in post-conviction. It is included in the Memorandum in Support of the Petition (Doc. No. 3), but that does not excuse Marshall's failure to present it to the state courts. This sub-claim is also procedurally defaulted.

Marshall claims the prosecutor committed misconduct by presenting different theories of what happened in his trial and in Jones (Objections, Doc. No. 41, PageID 3362-3363). That sub-claim also was not presented on direct appeal and is therefore procedurally defaulted.

The asserted inconsistency also is not inconsistent. Sublett was shot first and then run over by the Dodge Durango in which Marshall was a passenger and Jason Jones was the driver. At Marshall's trial the coroner testified that the gunshot wounds to the head were the cause of Sublett's death. At Jones' trial, the same deputy coroner testified that the truck driving over him could have caused Sublett's death. That testimony can readily be understood as meaning that if the gunshot wounds had not killed Sublett, the deliberate running over with the truck could have. In other words, the vehicle striking was a mortal wound and would have caused death if the gunshots had not.

Marshall complains of the prosecutor's argument at sentencing to Judge Nelson that "[t]hese guys were running a major operation." (Objections, Doc. No. 41, PageID 3363). Putting to one side whether this sub-claim was ever raised before, that is a fair comment with respect to these two drug dealers who had 429 pounds of marijuana in the freezer.

---

³ Although Jones and Marshall were indicted together, Marshall's case was severed from the others for trial at his request.

The claim of prosecutorial misconduct regarding Washington's testimony has been dealt with above. No further analysis is needed, beyond that given in the Report, with respect to the claim that failure to disclose Yolanda Bailey as a witness was a Brady violation: whatever she was eventually willing to testify to when approached after trial, she initially told police she did not witness the shooting.

Having reconsidered the Fifth Ground for Relief, the Magistrate Judge again respectfully recommends that it be dismissed with prejudice.

### Ground Six: Denial of a New Trial

In his Sixth Ground for Relief, Marshall claims he was denied his constitutional rights when the state courts denied his motion for new trial. The Report recommended denying this claim without prejudice because it was raised only under state law in the state courts and Petitioner had not cited any federal law creating a right to a new trial in a state court.

In his Objections, Marshall cites only two federal cases, *United States v. Pellulo*, 105 F.3d 117 (3rd Cir. 1997), and *United States v. Washington*, 184 F.3d 653 (7th Cir. 1999). Neither one of these cases holds that there is a constitutional right to a new trial in the state courts upon the presentation of newly-discovered evidence.

The substance of Marshall's Sixth Ground for Relief is a reprise of his argument that failure to disclose Yolanda Bailey as a witness was a *Brady* violation. That claim is dealt with substantively as a sub-claim of Ground Five.

**Ground Seven:  Error in Sentencing**

Marshall was convicted of both murder and involuntary manslaughter.  On direct appeal he successfully argued that, because involuntary manslaughter is a lesser included offense of murder, he could not be convicted of both.  The court of appeals agreed and vacated the involuntary manslaughter conviction.  *State v. Marshall*, 175 Ohio App. 3d 488 at ¶ 80.

In his Objections, Marshall argues this was inconsistent with the actions taken by the same court of appeals in *State v. Griffin*, 175 Ohio App. 3d 325 (Ohio App. 1st Dist. 2008), and *State v. Duncan*, 154 Ohio App. 3d 254 (Ohio App. 1st Dist. 2003) (Objections, Doc. No. 41, PageID 3367).  He ignores the analysis in the Report showing that those two cases involved inconsistent verdicts on murder and **voluntary** manslaughter charges.  No further analysis on this point is needed beyond what appears in the Report.

Marshall again claims the jury was improperly instructed.  Noting this claim, the Report points out that it was never raised before (Report, Doc. No. 39, PageID 3340).  In response, the Objections assert this claim is not procedurally defaulted because it was raised in the Ohio Supreme Court (Objections, Doc. No. 41, PageID 3370, citing Respondent's Supplemental Answer/Return of Writ, page 26.)  It is clear from their opinion that no such claim was made to the Hamilton County Court of Appeals; the portion of their opinion addressing the seventh assignment of error does not discuss jury instructions at all.  *State v. Marshall*, 175 Ohio App. 3d 488 at ¶¶ 76-83.  In his Memorandum in Support of Jurisdiction in the Ohio Supreme Court, Marshall raised the alleged sentencing errors in his Proposition of Law No. VII, arguing in part:

> A jury should decide if the Appellant is guilty of either of the charges, not the Appeals Court. The trial Court also erred in its jury instructions when it failed to instruct the jury in this case that if it found the Appellant had committed murder, but additionally

> found the presence of a mitigating circumstance under involuntary manslaughter, it had to find the Appellant guilty of involuntary manslaughter rather than murder. The Appellate Court and Trial Court erred in this case and Appellant asserts that a retrial is warranted. This is a Fourteenth Amendment violation.

(Supplemental Return of Writ, Doc. No. 33, Ex. 23, PageID 1883).

Raising a claim for the first time in the Ohio Supreme Court does not preserve that claim for habeas corpus consideration because the Ohio Supreme Court will not consider an issue which has not been first raised in the court of appeals. Paragraph 2 of the syllabus in *State v. Williams,* 51 Ohio St. 2d 112, 364 N.E. 2d 1364 (1977); (*Toledo v. Reasonover*, 5 Ohio St.2d 22, 213 N.E.2d 179 (1965), approved and followed). This explicitly includes constitutional questions. *State v. Phillips,* 27 Ohio St. 2d 294, 272 N.E. 2d 347 (1971). Furthermore, because this issue was available to Marshall from the record on direct appeal, the Ohio criminal *res judicata* doctrine barred him from later raising it in post-conviction. *State v. Perry,* 10 Ohio St. 2d 175 (1967). That doctrine is an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001). Because Marshall did not raise his jury instruction claim in the Hamilton County Court of Appeals, he has procedurally defaulted it. Even if the Ohio Supreme Court had considered this claim on the merits, it would have rejected it under Ohio law because the mitigating circumstance, if proven, would have reduced the charge from murder to voluntary manslaughter, not involuntary manslaughter.

### Ground Eight:  Ineffective Assistance of Counsel

In his Eighth Ground for Relief, Marshall raises nine sub-claims of ineffective assistance of trial counsel.  The first four sub-claims were raised on direct appeal and decided on the merits by the Hamilton County Court of Appeals.  The Report concluded that the court of appeals applied the correct standard from *Strickland v. Washington*, 466 U.S. 668 (1984), and did so reasonably (Report, Doc. No. 39, PageID 3345-3346).  As to sub-claims five through nine, the Report concluded they were procedurally defaulted because they had never been presented to the Ohio courts.  *Id.* at PageID 3346-3347.

In his Objections, Marshall deals with the sub-claims as follows:

**Sub-claim 1 – failure to argue self-defense** – is withdrawn (Objections, Doc. No. 41, PageID 3370).

**Sub-claim 2 – failure to remove a juror.**  Marshall argued the juror should have been excused because he was a neighbor of a high-ranking assistant county prosecutor.  On direct appeal, Marshall argued only that the juror should have been "challenged," but no cause for challenge was presented.  The court of appeals found this claim was without merit because the neighbor was not involved in the trial and the juror stated unequivocally that he could be impartial. *State v. Marshall*, 175 Ohio App. 3d 488 at ¶87.  The Report concluded this was not an objectively unreasonable application of *Strickland* and was therefore entitled to deference.

In his Objections, Marshall now argues his counsel should have "removed" this juror, rather than "challenged" him.  As the court of appeals inferentially held, there was no basis on which he could have been successfully challenged for cause.  Marshall did not present the claim he now apparently makes – that the juror should have been peremptorily removed – in the state

courts and has therefore procedurally defaulted it.  In particular the claim that it was ineffective assistance of trial counsel to leave this juror on because he was an engineer was never raised in the state courts at all.

**Sub-claim 3 – failure to argue Sublett had two guns.**  This claim was made in one sentence on appeal:  "Counsel failed to argue that Sublett had two guns, one in his pocket and one in his hands, especially in light of the evidence that Washington admitted to removing evidence from the scene."  (Appellant's Brief, Supplemental Return of Writ, Doc. No. 33, PageID 1806.)  The court of appeals decided this sub-claim as follows:

> Third, counsel's failure to argue that Sublett had two guns with him, one in his pocket and one in his hand, did not constitute ineffective assistance.  Because Marshall's defense was that he was not the shooter, the number of weapons possessed by the victim was immaterial.

*State v. Marshall*, 175 Ohio App. 3d 488 at ¶88.  Marshall refuses to acknowledge the court of appeals' point.  In his Objections he argues that if his counsel had argued Sublett had two guns, the jury would have believed this was an aggravated robbery and not a "snatch and grab." (Objections, Doc. No. 41, PageID 3371.)  Marshall is fixated on this difference, but legally there is no difference whether when Sublett was shot he had two guns or only one.  No one testified that Sublett had two guns.  Marshall testified that Sublett had a gun and a gun was found on Sublett's person at the hospital.  Washington had an opportunity and motive to remove evidence and could have removed a gun which was outside Sublett's clothing, so this argument could have been made within the bounds of defense counsel's ethical duties.  But Marshall has failed to show it would have made any difference.  More importantly, he has failed to show that the court of appeals' decision that it would have made no difference is an unreasonable application of Supreme Court precedent.

**Sub-claim 4 – failure to call Yolanda Bailey as a witness.** The court of appeals rejected this claim by noting "Bailey purposely avoided involvement in this case and told police that she had not witnessed the shooting." *State v. Marshall*, 175 Ohio App. 3d 488 at ¶89. The Report concluded this decision was not an objectively unreasonable application of *Strickland*. Marshall objects that without Bailey, he had no defense (Objections, Doc. No. 41, PageID 3371).

Marshall's speculation that Bailey would have testified at trial as she has done in her affidavit in post-conviction is just that – speculation. She affirmatively told the police she did not witness the shooting. Faced with that report, why would counsel believe she would testify differently at trial? And of course she was not the only witness to the shooting who could have exonerated Marshall: if Marshall and Jones had told what they now say is the truth – that Jones was the driver and shooter – there is a good chance the jury would have accepted Jones' admission. But Jones is only willing to make that admission now, when he is protected by double jeopardy from conviction for the murder.

**Sub-claim 5 – failure to investigate or hire an investigator.** The Report found this claim procedurally defaulted because it had never been raised in the state courts. (Report, Doc. No. 39, PageID 3346.) Marshall objects that it is not procedurally defaulted because it is the same claim as sub-claim four (Objections, Doc. No. 41, PageID 3372). In other words, Marshall is limiting his failure to investigate claim to the failure to find and call Ms. Bailey. Thus limited, the sub-claim is not procedurally defaulted, but is without merit for the same reasons given as to sub-claim four.

**Sub-claim 6 – failure to employ a specialist to re-enact the shooting.** The Report concluded this sub-claim was procedurally defaulted for failure to present it to the state courts.

In his Objections, Marshall has withdrawn this sub-claim (Objections, Doc. No. 49, PageID 3372.)

**Sub-claim 7 – failure to use the DVDs to show how many other guns and robberies Sublett and Washington have.**  The Report found this claim barred by *res judicata* because never presented to the state courts.  Marshall objects that it is not barred because it is the same claim as sub-claim 3 (Objections, Doc. No. 41, PageID 3372).  When sub-claim 7 is recharacterized in that way, it should be dismissed on the same basis as sub-claim 3.

**Sub-claim 8 – failure to pursue the fact that Washington had the opportunity to remove a gun from the crime scene.**  The Report found this claim procedurally barred for failure to present it to the state courts.  Marshall objects that it is the same claim as sub-claim 3. (Objections, Doc. No. 41, PageID 3372).  When sub-claim 8 is recharacterized in that way, it should be dismissed on the same basis as sub-claim 3.

**Sub-claim 9 – failure to request a lesser-included offense jury instruction.**  The Report found this sub-claim barred by *res judicata* and Marshall has not withdrawn it. (Objections, Doc. No. 41, PageID 3373.)

Having reconsidered Marshall's Eighth Ground for Relief in light of his Objections, the Magistrate Judge again recommends that this Ground be dismissed with prejudice.

### Ground Nine: Actual Innocence

In Ground Nine, Marshall claims he is entitled to habeas corpus relief because he is actually innocent of the murder of Junis Sublett because Jason Jones was the driver and shooter. Marshall raised this claim in the Common Pleas Court in his motion for new trial and his petition

for post-conviction relief. Common Pleas Judge Metz filed detailed findings of fact as to why the evidence relied on was not newly-discovered, to wit, that Marshall knew whether or not Jones was the shooter on the day it happened. None of the other affiants saw the shooting; all claim Jones admitted it to them afterward.

In his prior papers and in his Objections, Marshall makes much of the point that he did not actually file a motion for new trial, but a motion for leave to file a delayed motion for new trial, since he was well beyond the deadline for a motion for new trial under the Ohio Rules of Criminal Procedure. He claims the Common Pleas Court could not lawfully deny a motion he never filed, but that is a matter of state law and the state court of appeals upheld Judge Metz over just this objection. Federal habeas courts are bound by state court determinations of state law.

Marshall objects to the statement in the Report that Jason Jones previously testified that he was not there (Objections, Doc. No. 41, PageID 3374, citing Report, Doc. No. 39, PageID 3349). Marshall says "Jones has never testified or given a statement. Jason Jones has always pleaded the 5th." *Id.* Actually, the statement at that point in the Report is a quotation from Judge Metz's findings of fact. The Magistrate Judge will assume for the sake of argument that Judge Metz is incorrect and Jones has never testified. What Marshall misses is that Jones continued to invoke his privilege against self-incrimination until after he was acquitted of murder. But if Jones is the shooter, Marshall has known that from the moment the shooting happened. Why did Marshall lie twice, once at his own trial and once at Jones', to say Jones wasn't there? Why should the judicial system accept his word now when he is by his own admission twice a perjurer? And the affiants who now blame Jones have known of Jones' admission of guilt to them since the day of the shooting. Where were they at the time of Marshall's trial?

16

Marshall poignantly says "[j]ust because Marshall committed perjury does not mean he is the shooter." (Objections, Doc. No. 41, PageID 3374.) That is true. But Marshall's evidence that he is not the shooter is neither new nor reliable. The state courts' decision to that effect is not an unreasonable application of relevant Supreme Court precedent.

### Ground Ten:  Error by the Trial Judge in His Findings

In his Tenth Ground for Relief, Marshall claimed Judge Metz erred in making assumptions about his family and the origins of the affidavits presented in support of a new trial (Reply, Doc. No. 37, PageID 3298). The Report concludes Judge Metz's inferences are supported by the record and, in any event, there is no constitutional claim made (Report, Doc. No. 39, PageID 3351). Although Marshall objects, no further analysis is needed on this Ground for Relief.

### Conclusion

In accordance with this analysis, it is again respectfully recommended that the Petition be dismissed with prejudice and that Marshall be denied a certificate of appealability and leave to appeal *in forma pauperis*.

December 4, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).