**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| James Marshall, | ) |
| | ) |
| Petitioner, | ) Case No. 1:09-CV-429 |
| | ) |
| vs. | ) |
| | ) |
| Warden, Ross Correctional | ) |
| Institution, | ) |
| | ) |
| Respondent. | ) |

O R D E R

This matter is before the Court on Petitioner James Marshall's petition for a writ

of habeas corpus (Doc. No. 2), two Reports and Recommendations filed by Magistrate

Judge Merz (Doc. Nos. 39 & 43) recommending that Petitioner's petition be denied, and

Petitioner's objections to those Reports and Recommendations (Doc. Nos. 41 & 46).

For the reasons that follow, Petitioner's objections are not well-taken and are

**OVERRULED**; the Court **ADOPTS** the Report and Recommendation; Petitioner's

petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

I. Background

Petitioner James Marshall is a prisoner in the custody of the Ohio Department of

Rehabilitation and Correction serving an aggregate term of 20½ years to life

imprisonment after a jury convicted him of murdering Junis Sublett.

In May 2005, Deangelo Tait, Randy Washington, and Sublett conceived a plan to

rob Petitioner of two pounds of marijuana during a drug transaction that was to take

place at an apartment complex in Springfield Township where Tait lived.  According to

1

their plan, the robbery was supposed to be a "snatch and grab" in which Sublett was supposed to grab the marijuana from Petitioner and then run to meet Washington in a getaway car. Although according to Washington the plan was not supposed to involve the use of a gun, a pistol was discovered later in one of Sublett's pants pockets.

Petitioner arrived at the deal as the passenger in a green Dodge Durango driven by a man the police later identified as Jason Jones. Sublett entered the rear passenger compartment of the Durango and was shot in the back of the head after he exited the vehicle. Jones then ran over Sublett as he and Petitioner fled the scene. The coroner testified that the Sublett's gunshot wound was fatal and that the bullet entered Sublett's skull above and behind his left ear and exited above and in front of his right ear. The coroner opined that Sublett was moving away from the gun when he was shot. Eyewitness testimony and circumstantial evidence adduced by the prosecution indicated that the fatal gunshot was fired by the passenger of the Durango.

Petitioner testified at trial and admitted that he was at the scene but claimed that Sublett pulled a gun as they were negotiating the price and indicated that he was going to rob them. Petitioner claimed further that Sublett ordered him to put his head between his legs. Petitioner also testified that the driver of the Durango was not Jones, but rather a man he knew only as DC. Petitioner testified that Sublett took the marijuana, exited the vehicle, and then indicated that he wanted their personal belongings as well. Petitioner's testimony indicated that DC shot Sublett as Sublett was trying to unlock the passenger door through the open window. See State v. Marshall, 887 N.E.2d 1227, 1231-37 (Ohio Ct. App. 2008).

The jury convicted Petitioner on charges of murder, involuntary manslaughter,

2

drug trafficking, and drug possession, all with firearms specifications.  During its investigation, the police interviewed one of Tait's neighbors, Yolanda Bailey, who said at the time that she did not witness the shooting.  After the jury returned its verdicts, however, Petitioner produced an affidavit from Bailey in which she claimed that the driver of the Durango shot Sublett.  Petitioner moved for a new trial based on Bailey's affidavit.  The trial court, however, denied Petitioner's motion after an evidentiary hearing, concluding that Bailey's testimony would not have produced a different result at trial.  Id. at 1241.  The trial court then sentenced Petitioner to an aggregate term of 20½ years to life imprisonment.  Id. at 1237.

Petitioner raised eight assignments of error in his direct appeal to the Ohio Court of Appeals.  Petitioner's first three assignments of error alleged that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.   Petitioner's fourth assignment of error alleged that the trial court erred by admitting evidence that he had used a false name prior to the shooting to avoid prosecution for a probation violation, by admitting evidence that the police discovered a large amount of marijuana in a house that Jason Jones shared with Petitioner's sister, and by admitting evidence of the discovery of a shell casing at the crime scene five days after the shooting.  Petitioner's fifth assignment of error alleged three instances of prosecutorial misconduct during the trial.  Petitioner's sixth assignment of error claimed that the trial court erred in denying his motion for a new trial.  Petitioner's seventh assignment of error alleged that the trial court erred by sentencing him for both murder and involuntary manslaughter.  Petitioner's eighth assignment of error asserted four separate instances where his trial counsel allegedly provided constitutionally defective

assistance.

The court of appeals agreed with Petitioner that the trial court erred by sentencing him to imprisonment for both murder and involuntary manslaughter. The court of appeals also concluded that the trial court erred in convicting Petitioner of both possessing marijuana and trafficking in marijuana as they are allied offenses of similar import. The court of appeals, therefore, vacated Petitioner's convictions for involuntary manslaughter, possession of marijuana, and trafficking marijuana. The court of appeals ordered the trial court to re-sentence Petitioner on either possession of marijuana or trafficking in marijuana. The court of appeals, however, overruled Petitioner's remaining assignments of error and otherwise affirmed the trial court's judgment. Marshall, 887 N.E.2d at 1243-44. The Supreme Court of Ohio declined further discretionary review of Petitioner's appeal. State v. Marshall, 889 N.E.2d 1027 (Ohio 2008).

Petitioner initiated post-conviction relief proceedings in which he again tendered Yolanda Bailey's affidavit as newly-discovered evidence which warranted a new trial. The trial court denied Petitioner's motion for post-conviction relief as not presenting any new evidence. Doc. No. 33-1, at 206. The Ohio court of appeals affirmed the trial court's judgment and the Supreme Court of Ohio declined further review of Petitioner's appeal as not involving any substantial constitutional question. Doc. No. 33-1, at 246-48, 294.

Petitioner filed a petition for a writ of habeas corpus with this Court pursuant to 28 U.S.C. § 2254 in June 2009. Petitioner then moved to stay these habeas proceedings while he filed a delayed motion for a new trial in state court based on newly-discovered evidence. Petitioner's alleged newly-discovered evidence consisted

4

of affidavits of witnesses indicating that Jason Jones shot Sublett, including an affidavit from Jones in which he admitted shooting Sublett.  Doc. No. 19.[1]  Then-Magistrate Judge Hogan stayed the case while Petitioner exhausted his delayed motion for a new trial in state court.

The state court denied Petitioner's delayed motion for a new trial, concluding essentially that Petitioner failed to submit newly-discovered evidence since - according to his own affidavit - he knew all along that Jason Jones actually shot Sublett. Doc. No. 33-2, at 15-30.  The Ohio court of appeals affirmed the trial court's judgment, Doc. No. 33-2, at 93-94, and the Supreme Court of Ohio declined further discretionary review of Petitioner's appeal as not involving any substantial constitutional question.  Doc. No. 33-20, at 120.  Subsequently, on Petitioner's motion, Judge Barrett reopened this case.

Petitioner's amended habeas petition raises ten assignments of error:

1. Petitioner's conviction was contrary to law and to the Due Process Clause of the Fourteenth Amendment because the evidence was insufficient to establish each element of the offense.

2. Petitioner's conviction was against the manifest weight of the evidence.

3. The trial court erred by denying Petitioner's motion for judgment of acquittal.

4. The trial court erred by admitting evidence of Petitioner's prior use of a false name.

5. Petitioner's due process rights were violated due to prosecutorial misconduct during the trial.

6. The trial court erred by denying Petitioner's motion for a new trial.
7. The trial court erred by imposing a sentence contrary to law.

---

[1]     Jones was convicted of involuntary manslaughter for his role in Sublett's death in a separate trial and was sentenced to eight years of imprisonment.  State v. Jones, No. C-060512, 2007 WL 2965341 (Ohio Ct. App.  Oct. 12, 2007).

8. Petitioner's trial counsel was ineffective.

9. The trial court erred by denying Petitioner's delayed motion to reopen his trial.

10. The trial court violated Petitioner's right to due process when the trial court stated that he and his family schemed to subvert justice by committing perjury.

See generally Doc. No. 2.

In August 2012, Petitioner moved to expanded the record to include the state court grand jury transcripts. Doc. No. 36. Petitioner also moved for an evidentiary hearing. Doc. No. 38.

In September 2012, Magistrate Judge Merz issued his first Report and Recommendation on Petitioner's habeas petition. Doc. No. 39. Summarized, Judge Merz concluded that:

1. Petitioner is not entitled to expand the record because he failed to show how the grand jury transcripts would support his claims.

2. Pursuant to Cullen v. Pinholster, 563 U.S.___, 131 S. Ct. 1388 (2011), Petitioner is not entitled to an evidentiary hearing on his claims.

3. Petitioner's first and third assignments of error are without merit because there was sufficient evidence for the jury to conclude that Petitioner shot Sublett.

4. Petitioner's second assignment of error is not cognizable in federal habeas proceedings.

5. Petitioner's fourth assignment of error presents only questions of state law that are not cognizable in federal habeas proceedings, or alternatively, that the state court's admission of evidence did not result in fundamental unfairness.

6. Petitioner is not entitled to relief on his fifth assignment of error because the state court's determination that the state did not commit prosecutorial misconduct is entitled to deference.

7. Petitioner's sixth assignment of error should be dismissed without prejudice for failure to state a constitutional claim.

8. Petitioner's seventh assignment of error is without merit.

6

9. With regard to the eighth assignment of error, Petitioner procedurally defaulted subclaims five through nine and his other claims of ineffective assistance of counsel are without merit.

10.  Petitioner's ninth assignment of error is not cognizable in federal habeas proceedings, or alternatively is without merit because Petitioner failed to make a showing of actual innocence.

11. Petitioner's tenth assignment of error fails to allege a constitutional claim.

Petitioner filed objections to this Report and Recommendation (Doc. No. 41) which Judge Barrett referred back to Magistrate Judge Merz for a supplemental report. Doc. No. 42.  Judge Merz's Supplemental Report and Recommendation (Doc. No. 43) concluded that Petitioner failed to lodge any meritorious objections to his original Report and Recommendation.  Petitioner then filed objections to the Supplemental Report and Recommendation (Doc. No. 46) in which he now concedes that certain conclusions of the original Report and Recommendation are correct.[2]  Otherwise, Petitioner's objections to both Reports and Recommendations are ready for disposition.

II. Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, the district court shall not grant a petition for a writ of habeas corpus on any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of

---

[2]      Specifically, Petitioner has withdrawn subclaims 1 and 9 of his ineffective assistance of counsel assignment of error.

the facts in light of the evidence presented in the State court  proceeding.

28 U.S.C. § 2254(d).

A state-court opinion violates the "unreasonable application" clause of § 2254

when "the state court identifies the correct governing legal principle from [the Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's

case."  Williams v. Taylor, 529 U.S. 362, 413 (2000).  A state-court opinion will also

involve the "unreasonable application" of Supreme Court precedent if it "either

unreasonably extends or unreasonably refuses to extend a legal principle from Supreme

Court precedent to a new context." Seymour v. Walker, 224 F.3d 542, 549 (6th Cir.

2000).  The Supreme Court stated that "a federal habeas court making the

'unreasonable application' inquiry should ask whether the state court's application of

clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at

409.  In defining the meaning of the term "objectively unreasonable," the Court stated

that "a federal habeas court may not issue the writ simply because that court concludes

in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly.  Rather, that application must also be

unreasonable."  Id. at 411.

Pursuant to Fed. R. Civ. P. 72(b), this Court reviews de novo Magistrate Judge

Litkovitz's Report and Recommendation.

### III.  Analysis

#### A. Motion to Expand the Record

According to Petitioner, the grand jury transcripts show that Washington made

inconsistent statements about whether he knew that Sublett intended to carry a gun

during the marijuana robbery.  The Ohio court of appeals, however, specifically addressed the issue of Washington's alleged inconsistent statements about Sublett's gun.  The court of appeals noted that it did not have the grand jury transcripts before it, but concluded in any event that Petitioner's trial counsel effectively impeached Washington on this point.  See Marshall, 887 N.E.2d at 1240.  The court of appeals also found that Marshall failed to cite any authority to support his proposition that the prosecution knowingly presents false testimony when a witness makes inconsistent statements.  Id.

A federal habeas court is limited to the record before the state court when it adjudicated the claim on the merits.  Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).  In this case, the state court of appeals' decision makes clear that the grand jury transcripts were not before it when it adjudicated Petitioner's claim that the prosecution withheld relevant impeaching evidence.  Similarly, the court of appeals adjudicated on the merits Petitioner's claim that the prosecution knowingly presented false testimony.  Consequently, Petitioner is not entitled to expand the record to include the grand jury transcripts.  See id.

Accordingly, Petitioner's objection to Judge Merz's resolution of his motion to expand the record is not well-taken and is **OVERRULED.**

### B. Motion for an Evidentiary Hearing

Petitioner moves for an evidentiary hearing so he can present the testimony of Jason Jones who, Petitioner contends, will testify that he, not Petitioner, shot Junis Sublett.  Magistrate Judge Merz correctly determined that Petitioner is not entitled to an evidentiary hearing to present Jones's testimony.  First, Jones's testimony would be

cumulative of his affidavit admitting that he shot Sublett that is already a part of the record before the Court.  Second, the state court already adjudicated on the merits Petitioner's contention that Jones's affidavit is newly-discovered evidence that warrants a new trial.  Consequently, Petitioner is not entitled to an evidentiary hearing to present Jones's testimony to the Court.  Pinholster, 131 S. Ct. at 1399-1400.

Accordingly, Petitioner's objection to Magistrate Judge Merz's resolution of his motion for an evidentiary hearing is not well-taken and is **OVERRULED.**

## C. Insufficiency of the Evidence

Petitioner contends that the evidence was insufficient for the jury to conclude that he shot Sublett and/or that he acted with the purpose to cause Sublett's death.  Relatedly, he claims that the trial court erred in denying his motion for a directed verdict on the grounds that the evidence was insufficient for the jury to convict him of murdering Sublett.

The Ohio court of appeals ruled that eyewitness testimony and circumstantial evidence supported the jury's conclusion that Petitioner shot Sublett.  The court noted that a witness testified that the gun used to shoot Sublett was pointed out of the front passenger window and that Washington testified that Petitioner was the passenger - a fact that Petitioner admitted.  The court determined, therefore, that the circumstantial was evidence sufficient to prove that Petitioner shot Sublett.  Marshall, 887 N.E.2d at 1237.  The court of appeals also found that the evidence was sufficient to prove that Petitioner acted with the purpose to kill Sublett.  In support, the court cited the state's evidence showing that Sublett's gun was in his pocket, that Sublett was moving away from the Durango when he was shot, and the trajectory of the bullet from the rear to the

10

front of Sublett's head.  Id. at 1237-38.

The Court's review of this assignment of error is limited to determining whether the state court of appeals was objectively unreasonable in concluding that a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of murder beyond a reasonable doubt.  Nash v. Eberlin, 258 Fed. Appx. 761, 765 (6th Cir. 2007).

Petitioner was charged with the murder of Sublett pursuant to Ohio Rev. Code § 2903.02(A).  Section 2903.02(A) provides: "No person shall purposely cause the death of another or the unlawful termination of another's pregnancy."  The trial court instructed the jury that in order to prove this crime, the prosecution had to prove beyond a reasonable doubt that Petitioner purposely caused Junis Sublett's death.  Doc. No. 33-84.  The Ohio court of appeals reasonably concluded that the prosecution adduced sufficient evidence to carry this burden.

First, the evidence was more than sufficient for a reasonable juror to conclude that Petitioner was the person who shot Sublett.  Consequently, the state court of appeals' determination that the evidence was sufficient for a reasonable juror to reach that conclusion was not objectively unreasonable.  As already discussed, Petitioner admits and admitted that he was the passenger of the Durango and eyewitness testimony and circumstantial evidence indicated that the fatal gunshot was fired by the passenger of the Durango.

Second, the Ohio court of appeals' determination that the evidence was sufficient for a reasonable juror to find that Petitioner purposely killed Sublett was not objectively unreasonable.  Under Ohio law, a person's intent to kill can be satisfactorily established

11

by proof that he pointed a firearm and fired it in the direction of another person.  See
State v. Smith, 624 N.E.2d 1114, 1116 (Ohio App. Ct. 1993) (evidence was sufficient to
establish purpose to kill where defendant fired one shot at close range into a group of
people).  Here, similar to Smith and as recited by the court of appeals, the evidence
adduced by the prosecution showed that Petitioner shot Sublett in the back of head at
close range while he was moving away from the truck.  Thus, the court of appeals
reasonably concluded that the evidence was sufficient for the jury to find that Petitioner
purposely killed Sublett.  In arguing otherwise, Petitioner mistakenly views the evidence
only in his own favor.

Petitioner's objections to Judge Merz's resolution of his claims related to the
sufficiency of the evidence are not well-taken and are **OVERRULED.**

## D. Manifest Weight of the Evidence

Magistrate Judge Merz correctly determined that Petitioner's claim that the jury's
verdict was against the manifest weight of the evidence is a state law claim not
cognizable in federal habeas proceedings.  Nash v. Eberlin, 258 Fed. Appx. 761, 764
n.4 (6th Cir. 2007).  Petitioner's objections to Judge Merz's resolution of this claim only
repeat his sufficiency of the evidence arguments and are not well-taken for the reasons
just stated.  Petitioner's objections, therefore, are not well-taken and are **OVERRULED.**

## E. State Court Evidentiary Rulings

Petitioner claims that the trial court erred by admitting evidence that he had
previously used a false name, evidence that the police discovered 429 pounds of
marijuana in the home that Jason Jones shared with his sister, and evidence of the

12

recovery a shell casing.  The Ohio court of appeals ruled that it was Petitioner who testified about using a false name, and that, therefore, he could not object on appeal to the trial court's admission of his own testimony.  Marshall, 887 N.E.2d at 1239.  The court of appeals ruled further that evidence concerning the 429 pounds of marijuana was relevant to show that Petitioner and Jones trafficked in marijuana together and tended to disprove Petitioner's contention that DC was the driver of the Durango.  The court also ruled that this evidence tended to show that Petitioner trafficked in marijuana and possessed marijuana, two other offenses he was charged with.  Id.  Petitioner did not raise the issue of the shell casing in his direct appeal.

It is well-settled that trial court errors in the application of state evidentiary law generally are not cognizable as grounds for federal habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Serra v. Michigan Dep't of Corr., 4 F.3d 1348, 1354 (6th Cir.1993).  Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant federal habeas relief.  See Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003); see also Clemmons v. Sowders, 34 F.3d 352, 356 (6th Cir.1994).  "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000) (quoting Montana v. Egelhoff, 518 U.S. 37, 43 (1996)).

The trial court's evidentiary rulings come nowhere close to violating Petitioner's due process rights.  Even if he had not apparently first broached the subject himself, Petitioner's prior use of a false name would have been relevant to impeach his

13

credibility.  The state court of appeals offered eminently plausible bases for the admission of the evidence concerning the marijuana - it tended to link Petitioner and Jones together in Sublett's murder, hence discrediting Petitioner's claim that DC was the shooter, and it tended to show that Petitioner trafficked in marijuana.  The shell casing was obviously relevant since it tended to show that the fatal shot came from the passenger side of the truck.

In short, Petitioner's objections to Magistrate Judge Merz's resolution of his assignment of error concerning the state court's evidentiary rulings are not well-taken and are **OVERRULED.**

### F. Prosecutorial Misconduct

Petitioner's prosecutorial misconduct claims boil down to three subissues: 1) the prosecutor called him a liar thirteen times; 2) the prosecution failed to disclose DVD's it disclosed to Washington in his prosecution which contained information concerning Washington's, Tait's, and Sublett's prior robberies and use of guns; and 3) failure to disclose Yolanda Bailey as a witness.  Magistrate Judge Merz concluded that the prosecution did not engage in misconduct by calling Petitioner a liar since he took the stand and admitted to using an alias to avoid arrest.  Judge Merz found that Petitioner procedurally defaulted the second claim by not raising it on direct appeal or in post-conviction relief proceedings.  Finally, Judge Merz determined that the prosecution did not commit a Brady violation by failing to disclose Yolanda Bailey as a witness because she told the police that she did not witness the murder.

The Court has reviewed the prosecution's closing arguments and in particular the transcript citations in Petitioner's objections to the Supplemental Report and

14

Recommendation and finds that this claim of prosecutorial misconduct is without support.  Petitioner in fact greatly exaggerates the number of times the prosecutor called him a liar, but more importantly the prosecutor generally did so in the context of debunking Petitioner's claim that DC shot Sublett.  See Doc. No. 33-10 (transcript of closing arguments).  This was fair commentary in light of Petitioner's admission that he had used a false name to avoid arrest.  See Wogenstahl v. Mitchell, 668 F.3d 307, 331 (6th Cir. 2012) (holding it was not improper for prosecutor to refer to the petitioner as a liar where prosecutor tied his comments to the evidence presented at trial).

Magistrate Judge Merz correctly concluded that Petitioner defaulted his Brady claim concerning the DVD's by failing to raise it in either his direct appeal or in his post-conviction relief proceedings.  Broom v. Mitchell, 441 F.3d 392, 401 (6th Cir. 2006).

Finally, Judge Merz correctly resolved Petitioner's Brady claim concerning the prosecution's alleged failure to disclose Yolanda Bailey as a witness.  The Ohio court of appeals reasonably ruled against Petitioner on this claim.  As the court pointed out, Bailey told the police that she did not see the shooting, thus she did not have any material or favorable evidence for the state to disclose before the trial.  See Marshall, 887 N.E.2d at 1240-41; United States v. Bibby, 752 F.2d 1116, 1125 (6th Cir. 1985)("The purpose of Brady and its progeny is not to require the prosecutor to search out exculpatory evidence but rather to divulge whatever exculpatory evidence it already has.") (emphasis added).

Petitioner's objections to Judge Merz's resolution of his prosecutorial misconduct claims are not well-taken and are **OVERRULED.**

## G. Denial of Motion for a New Trial

Petitioner claims that the trial court erred in denying his motion for new trial based on the alleged newly-discovered evidence of Yolanda Bailey's affidavit. Judge Merz concluded that this claim presented only a state law issue that is not cognizable in federal habeas proceedings and should, therefore, be dismissed without prejudice.

Since Petitioner filed his motion for a new trial before he filed his direct appeal, and the Ohio court of appeals considered and reviewed the motion on direct appeal, he is entitled to raise the issue of the trial court's failure to grant a new trial in his habeas petition. Pudelski v. Wilson, 576 F.3d 595, 611 (6th Cir. 2009). Nevertheless, in order to prevail on this claim, Petitioner must show that "the trial court's denial of his motion for new trial was 'so egregious' that it violated his right to a fundamentally fair trial." Id. at 612. See id. Petitioner, however, has not made the requisite showing because a reasonable juror still could have found him guilty of murdering Sublett. Stated another way, the state court reasonably determined that the outcome of Petitioner's trial would not have been different.

As already recounted, the state presented substantial eyewitness testimony and circumstantial evidence demonstrating that the passenger of the Durango shot Sublett. Although Bailey's testimony would have contradicted the state's evidence, her credibility would have been impeached during a new trial over her failure to come forward with her version of the incident until after the first trial was concluded. Additionally, Bailey seemed to indicate during the trial court's evidentiary hearing that Sublett was unclothed when he exited the truck. See Doc. No. 33-11, at 6 ("[H]is clothes was off before he got out of the car."). This testimony, however, is completely inconsistent with the trial record demonstrating that Sublett was fully clothed at least until he reached the

16

hospital.  See Marshall, 887 N.E.2d at 1233.  Consequently, a new jury likely would have concluded that Bailey was an unreliable witness and still have convicted Petitioner of murdering Sublett.

Accordingly, Petitioner's objections to Judge Merz's resolution of this claim are not well-taken and are **OVERRULED.**

## H. Sentencing Error

Petitioner's seventh assignment of error alleges that the Ohio court of appeals erred in vacating his conviction for involuntary manslaughter and allowing his murder conviction to stand.  Petitioner contends that murder and manslaughter are mutually exclusive offenses and a jury should decide which offense he committed.  Petitioner also contends that the trial court's jury instructions were also erroneous for allowing him to be convicted of both murder and involuntary manslaughter.  In his Report and Recommendation, Judge Merz pointed out that the court of appeals did not merge the two convictions - rather, the court vacated his voluntary manslaughter conviction.  Judge Merz also concluded that Petitioner procedurally defaulted any claim that the jury instructions were erroneous by not raising this issue in his direct appeal.  The Court concludes that Petitioner has failed to demonstrate a constitutional error.

Involuntary manslaughter is a lesser included offense of murder.  Indeed, the Supreme Court of Ohio has observed that a person cannot commit murder without committing involuntary manslaughter because murder necessarily involves committing or attempting to commit a felony or misdemeanor.  State v. Kidder, 513 N.E.2d 311, 316 (Ohio 1987); see also Marshall, 887 N.E.2d at 1242.  Under Ohio law,  conviction on the greater offense merges into it convictions on all lesser-included offenses.  In other

17

words, the jury can convict the defendant on the both the greater offense and the lesser offense, but the trial court can only sentence the defendant on the greater offense. State v. Botta, 271 N.E.2d 776, 779-82 (Ohio 1971); State v. Johnson, 942 N.E.2d 1061, 1063-64 & 1064 n.1 (Ohio 2010) (stating that merger has been incorporated into Ohio statutory law concerning offenses of allied import); Sailor v. Bradshaw, No. 1:05-CV-02112,  2006 WL 5067091, at *25 (N.D. Ohio Aug. 22, 2006) ("[T]he Ohio merger statute does not prevent a jury from returning separate guilty verdicts on multiple offenses arising out of the same conduct as long as the defendant is sentenced for only one.").  Moreover, in Botta, the Supreme Court of Ohio specifically rejected Petitioner's contention that, where the evidence is sufficient to convict the defendant on both the greater offense and the lesser offense, the jury must choose which of the two offenses he committed.  See Botta, 271 N.E.2d at 779, 782.  Petitioner has not cited any controlling authority indicating that the state court's merger of two offenses constitutes a constitutional violation.  In fact, on at least one occasion the U.S. Supreme Court has implicitly endorsed the constitutionality of the merger doctrine.  See Prince v. United States, 352 U.S. 322, 328-29 (1957)(holding that the lesser offense of entering a bank to commit a robbery merges into the greater offense of bank robbery).

    In this case, as already discussed, the evidence was sufficient for the jury to find that Petitioner purposely killed Sublett.  Consequently, Ohio law would have required Petitioner's involuntary manslaughter conviction for killing Sublett in the course of committing a felony or misdemeanor to merge into the murder conviction.  Although the state court of appeals vacated Petitioner's involuntary manslaughter conviction, it in effect merged the two convictions, as Petitioner argues in his papers.  But, because the

18

evidence was sufficient for the jury to find Petitioner guilty of murder, he has failed to demonstrate that the state court of appeals committed a constitutional error by vacating only his involuntary manslaughter conviction.

Accordingly, Petitioner's objections to Magistrate Judge Merz's resolution of this assignment of error are not well-taken and are **OVERRULED.**

### I. Ineffective Assistance of Trial Counsel

Petitioner asserts six subclaims of ineffective assistance of trial counsel:

1. trial counsel erred by not removing a juror who was a friend and neighbor of a high ranking official in the prosecutor's office.

2. trial counsel erred by not arguing that Sublett possessed two guns.

3. trial counsel erred by not hiring an investigator to do an investigation on his behalf.

4. trial counsel erred by not hiring a specialist to re-enact the shooting.

5. trial counsel erred by not using the DVD's to show how many guns Sublett had and how many robberies he committed.

6. trial counsel erred by not arguing that Washington had the opportunity to remove a second gun from the crime scene.  Magistrate Judge Merz concluded that Petitioner procedurally defaulted some of his ineffective assistance of counsel claims and that the state court's rulings on the remaining claims were not objectively unreasonable applications of the standard set out in Strickland v. Washington, 466 U.S. 668 (1984).

In order to establish a Strickland violation, a petitioner must show an unprofessional error by his trial counsel and prejudice, i.e., a reasonable likelihood that the outcome of the trial would have been different but for counsel's error.  466 U.S. at 694.

Regarding his first sub-claim, the state court of appeals ruled that counsel's failure to remove the juror was not prejudicial because the juror's neighbor was not involved in Petitioner's trial and he unequivocally stated that he could be impartial. Marshall, 887 N.E.2d at 1243. The state court's finding that Petitioner was not prejudiced by counsel's alleged error in failing to remove this juror was not contrary to controlling law or an objectively unreasonable application of Strickland because the trial court's determination that a juror can be impartial is entitled to substantial deference. See Skilling v. United States, 561 U.S. 358, 130 S. Ct. 2896, 2918 (2010)("Reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality, for that judge's appraisal is ordinarily influenced by a host of factors impossible to capture fully in the record—among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty."); Miller v. Francis, 269 F.3d 609, 618-19 (6th Cir. 2001) ("[T]he trial court cannot be faulted for not disqualifying for cause a juror who consistently says that she thinks she can be fair.").

Petitioner's second, fifth and sixth subclaims are interrelated. Washington admitted to the police that he removed a bag of marijuana from Sublett before the police arrived on the scene. Petitioner believes, therefore, that Washington might also have removed a second gun from Sublett's body before the police arrived. Petitioner believes that the number of guns Sublett possessed is material because he thinks that it transforms the snatch and grab of the marijuana into a robbery and makes it less likely that he purposely caused Sublett's death. The state court of appeals ruled that the number of guns Sublett possessed was immaterial because Petitioner's defense was that he was not the shooter. Marshall, 887 N.E.2d at 1243.

The state court's ruling was not an objectively unreasonable application of controlling precedent.  As the court pointed out, Petitioner's defense was that he did not shoot Sublett; therefore, it makes no difference how many guns Sublett possessed. Moreover, whether there was a robbery or merely a "snatch and grab" is of little consequence since Petitioner did not claim that he shot Sublett in self-defense.  Finally, Petitioner has not pointed to any evidence suggesting that Sublett possessed two guns. Trial counsel certainly cannot be faulted for not running down Petitioner's red herrings. Haliym v. Mitchell, 492 F.3d 680, 712 (6th Cir. 2007)("An attorney is not expected to follow up on every possible avenue of inquiry regardless of how improbable it is that that avenue would lead to useful evidence.").

Petitioner's third claim alleges that his trial counsel should have hired an investigator and that had he done so, Yolanda Bailey and other witnesses might have come forward.  The state court of appeals ruled that Petitioner failed to demonstrate prejudice resulting from this alleged error because Bailey purposely avoided becoming involved in the case and denied witnessing the shooting.  Marshall, 887 N.E.2d at 1243. The court of appeals also deferred to the trial court's determination that the outcome of Petitioner's trial likely would not have been different had Bailey testified.  Again, the state court's ruling was not contrary to or an unreasonable application of controlling precedent.

"A claim of failure to interview a witness may sound impressive in the abstract, but it cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel."  Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986).  Moreover, a petitioner fails to demonstrate prejudice resulting from

21

counsel's failure to investigate where there is no evidence that the witness would have testified at trial.  United States v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988).  In this case, Bailey did not recant her prior statement to the police until after Petitioner's trial was concluded.  Petitioner has not made any showing that had his trial counsel retained an investigator, and had that investigator interviewed Bailey, she would have told the investigator anything different from what she told the police.  Therefore, the state court's determination that Petitioner was not prejudiced by counsel's alleged error is not contrary to and indeed, consistent with, U.S. Supreme Court precedent.  See e.g. Burger v. Kemp, 483 U.S. 776, 794 (1987)(trial counsel was not ineffective because he interviewed all potential witnesses who were brought to his attention).

The state court also reasonably determined that Bailey's testimony likely would not have produced a different outcome at trial.  As discussed above, Bailey would have been subject to impeachment based on her prior inconsistent statements.  Moreover, her apparent claim that Sublett was unclothed when he exited the car is completely at odds with other undisputed evidence in the trial.  The jury likely would not have found Bailey to be a credible witness.

Petitioner's final claim is that trial counsel was ineffective for not hiring an expert to re-enact the shooting.  Magistrate Judge Merz correctly found that Petitioner procedurally defaulted this claim.  Although Petitioner is correct that he mentioned his counsel's failure hire a specialist to re-enact the shooting during his sentencing allocution, Doc. No. 33-12, at 14-15, he failed to raise this issue at any time in state court subsequent to his sentencing.  Consequently, this claim is procedurally defaulted and cannot be considered by this Court.  Seymour v. Walker, 224 F.3d 542, 549-50 (6th

22

Cir. 2000).

Accordingly, for the reasons stated above, Petitioner's objections to Magistrate Judge Merz's resolution of his ineffective assistance of counsel claims are not well-taken and are **OVERRULED.**

## J. Actual Innocence

Petitioner's ninth claim is a substantive claim that he is actually innocent of murder because Jason Jones now admits that he shot Sublett.  Magistrate Judge Merz correctly ruled that Petitioner's freestanding actual innocence claim is not cognizable n federal habeas proceedings.  Muntaser v. Bradshaw, 429 Fed. Appx. 515, 521 (6th Cir. 2011).

Accordingly, Petitioner's objection to Judge Merz's resolution of this claim is not well-taken and is **OVERRULED.**

## K. Trial Court Error in Findings

Petitioner's final assignment of error alleges that the trial court erred in accusing him and his family of scheming to subvert justice.  This claim relates to the trial court's rejection of Petitioner's motion for a new trial based on Jason Jones's affidavit.  Judge Merz found that the trial judge's findings were amply supported by Petitioner's own admission that he committed perjury in an attempt to obtain Jones's acquittal.  There was no constitutional error here.  The trial judge's findings and conclusions were clearly supported by Petitioner's admitted perjury.  Moreover, Petitioner cannot commit perjury during his trial and be heard to complain about the outcome later.  See Fields v. Bagley, 275 F.3d 478, 486 (6th Cir. 2001) ("When a petitioner invites an error in the trial court,

23

he is precluded from seeking habeas relief for that error.").

Accordingly, Petitioner's objection to Judge Merz's resolution of this claim is not well-taken and is **OVERRULED.**

<u>Conclusion</u>

For the foregoing reasons, Petitioner's objections to Magistrate Judge Merz's two Reports and Recommendations are not well-taken and are **OVERRULED.** The Court **ADOPTS** both of the Reports and Recommendations. Petitioner's application for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

A certificate of appealability will not issue with respect to this order because under the first prong of the applicable two-part standard established in <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural rulings. Additionally, Petitioner has failed to make a substantial showing of the denial of a constitutional right because reasonable jurists could not debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." <u>Id.</u> at 483-84. Petitioner remains free to request issuance of the certificate of appealability from the Court of Appeals. <u>See</u> 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b).

With respect to any application by Petitioner to proceed on appeal <u>in forma pauperis</u>, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of this order would not be taken in good faith. Therefore, Petitioner is **DENIED** leave to appeal <u>in forma pauperis</u>. <u>See</u> Fed. R. App. P. 24(a); <u>Kincade v. Sparkman</u>, 117 F.3d 949, 952

(6th Cir. 1997).

**IT IS SO ORDERED**

Date November 19, 2013                         s/Sandra S. Beckwith
                                              Sandra S. Beckwith
                                              Senior United States District Judge